UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
ANGELA YANCEY,                     )
                                   )
         Plaintiff,                )
                                   )
    v.                             )   Civil Action No. 10-1953 (PLF)
                                   )
DISTRICT OF COLUMBIA, *et al.*,    )
                                   )
         Defendants.               )
_____)

# OPINION

This matter came before the Court on the defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. By Order of September 30, 2013, the Court granted the defendants' motion as to the plaintiff's sole federal law claim and dismissed the plaintiff's remaining claims without prejudice. This Opinion explains the reasoning underlying that Order.[1]

## I. BACKGROUND

For the purposes of this motion, the Court accepts as true all facts as alleged in the complaint. On or about May 21, 1989, Dr. Angela Yancey accepted a position with the District of Columbia Department of Mental Health ("DMH") to work as a psychologist in the Forensic

---

[1] The papers reviewed in connection with this Opinion include the complaint ("Compl.") [Dkt. No. 1]; defendants' answer [Dkt. No. 3]; March 15, 2011 Order directing plaintiff to show cause as to why her complaint should not be dismissed as to defendant St. Elizabeths Hospital [Dkt. No. 5]; March 29, 2011 Order dismissing defendant St. Elizabeths Hospital ("Dismissal Order") [Dkt. No. 6]; defendants' motion for judgment on pleadings ("Defs.' Mot.") [Dkt. No. 32]; plaintiff's opposition to defendants' motion ("Pl.'s Opp'n") [Dkt. No. 33]; and defendants' reply ("Defs.' Reply") [Dkt. No. 36].

Inpatient Division of St. Elizabeths Hospital ("St. Elizabeths"). Compl. ¶ 8.[2] St. Elizabeths is a federally-funded psychiatric hospital located in, and operated by, the District of Columbia. Id. ¶ 2.

Upon her hiring by DMH, Dr. Yancey was led to believe that she would be eligible for benefits under the Civil Service Retirement System–Law Enforcement ("CSRS-LE"), a federal retirement benefits program. Compl. ¶ 9. Dr. Yancey's employment at St. Elizabeths continued for over twenty years, until she retired on July 31, 2009. Id. ¶¶ 11-12. During the course of Dr. Yancey's employment, DMH deducted $88,985 from her salary for retirement benefits, while continuing to represent that she was covered under the CSRS-LE retirement plan. Id. ¶ 12. Dr. Yancey retired based on representations made by DMH and St. Elizabeths "that she was eligible for retirement under the CSRS-LE and that she would receive a retirement incentive award payment in the amount of $25,000.00." Id. ¶ 14.

On September 18, 2009, Dr. Yancey was notified that "the government of the District of Columbia had erroneously coded her retirement benefits" and that she would not receive the $25,000 retirement incentive award that she expected. Compl. ¶ 16. Nor would she receive her retirement benefits through the CSRS-LE. Id. Dr. Yancey does not allege that she is deprived of retirement benefits entirely (*i.e.*, that alternative benefits are unavailable), but rather that she is deprived of those specific benefits – the incentive award and the CSRS monthly annuity – that she was promised. See id. ¶¶ 14, 16-17; Defs.' Mot. 3; Pl. Opp. 13. Dr. Yancey

---

[2] Subsequent to the filing of this lawsuit, DMH was integrated into the newly-established District of Columbia Department of Behavioral Health. See District of Columbia, Dep't of Behavioral Health Establishment Planning Committee, http://dmh.dc.gov/page/department-behavioral-health-establishment-planning-committee (visited October 29, 2013). For ease of reference, the Court refers only to DMH.

2

claims that she "has suffered significant financial and emotional injuries because of her reliance on the unfulfilled promises and representations from the defendants." Compl. ¶ 21.

On November 12, 2010, Dr. Yancey filed suit in this Court against the District of Columbia, DMH, and St. Elizabeths, bringing five claims against the defendants. Dr. Yancey's first three claims – (1) detrimental reliance/promissory estoppel; (2) breach of contract; and (3) fraudulent misrepresentation – are brought under District of Columbia common law. See Compl. ¶¶ 18-34. Dr. Yancey's fourth claim is presented as a request for declaratory relief, in which she asks the Court to declare that she is eligible for benefits under the CSRS-LE program and any other relief the Court deems appropriate. Id. ¶¶ 35-37 (Count IV).

Dr. Yancey's fifth and final claim is a federal constitutional claim based on the denial of property rights under color of law. Compl. ¶¶ 38-39 (Count V). Dr. Yancey alleges that the District denied her property rights without due process of law and without just compensation. Id. ¶ 39. Dr. Yancey does not clearly indicate whether she is bringing a procedural due process claim or a takings claim. Id.; see also Pl.'s Opp'n 13-14.

On March 29, 2013, defendant St. Elizabeths Hospital was dismissed from this case because Dr. Yancey had failed to submit proof of service within the 120-day period required by Rule 4(m) of the Federal Rules of Civil Procedure, and had failed to respond to a court order to show cause as to why St. Elizabeths should not be dismissed. See Dismissal Order. After limited discovery concluded, the District of Columbia moved for judgment on the pleadings. The District argues that Count V fails to state a claim, and that, without this federal law claim, the Court lacks original jurisdiction over any claim in this case. See Defs.' Mot 1; 7-12. The District contends that the remaining claims in this case therefore should be dismissed. Id. at 1,

12-13. Alternatively, the District asserts that those claims should be dismissed for failure to state a claim and lack of exhaustion of administrative remedies. Id. at 1, 13-24.

## II. LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The standard of review for a motion for judgment on the pleadings on the ground that the plaintiff has failed to state a claim "is functionally equivalent to a Rule 12(b)(6) motion" for failure to state a claim. Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 130 (D.C. Cir. 2012); see Lockhart v. Coastal Int'l Sec., Inc., 905 F. Supp. 2d 105, 114 (D.D.C. 2012) (on Rule 12(c) motion, "courts employ the same standard that governs a Rule 12(b)(6) motion to dismiss"). The Supreme Court's recent decisions in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), therefore apply to Rule 12(c) motions. Rollins v. Wackenhut Servs., Inc., 703 F.3d at 129-30; Lockhart v. Coastal Int'l Sec., Inc., 905 F. Supp. 2d at 114. On either a Rule 12(b)(6) or Rule 12(c) motion, a court may rely only on "facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice." Cole v. Boeing Co., 845 F. Supp. 2d 277, 283 (D.D.C. 2012) (citing Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007)). A court may grant the motion only if the facts alleged in the complaint do not "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. at 570.

## III. COUNT V – DENIAL OF PROPERTY RIGHTS UNDER COLOR OF LAW

Dr. Yancey appears to bring Count V – a claim of denial of property rights under color of law – under 42 U.S.C. § 1983. Compl. ¶ 5; Pl.'s Opp. 13-14. "To state a claim under

4

§ 1983, the plaintiff must allege the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' by a person acting under color of state, territorial or District of Columbia law." Smith v. Fenty, 684 F. Supp. 2d 64, 66-67 (D.D.C. 2010) (quoting 42 U.S.C. § 1983). To establish municipal liability under Section 1983, a plaintiff must show that the municipality implemented or executed a policy, custom or practice that caused the deprivation of an individual's constitutional rights. Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978).

In Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003), the D.C. Circuit noted that when evaluating a claim for municipal liability, the district court must conduct a two-step inquiry. First, the court must determine "whether the complaint states a claim for a predicate constitutional violation." Id. If it does, then the court must determine "whether the complaint states a claim that a custom or policy of the municipality caused the violation." Id. "Each inquiry is separate and serves different purposes." Id. The order in which a court undertakes each analytical step is not important. See Olaniyi v. Dist. of Columbia, 876 F. Supp. 2d 39, 47-53 (D.D.C. 2012) (finding no municipal liability based on the plaintiff's failure to establish policy or practice, without deciding whether first prong had been met); Poindexter v. Dist. of Columbia Dep't of Corrections, 891 F. Supp. 2d 117, 121-23 (D.D.C. 2012) (same); Clay v. Dist. of Columbia, 831 F. Supp. 2d 36, 44-45 (D.D.C. 2011) (same).

*A. Was There a Predicate Constitutional Violation?*

Construing the complaint liberally, Dr. Yancey appears to allege both a violation of her constitutionally-protected procedural due process rights and an unconstitutional taking of her private property. Although each of these claims is rooted in the Fifth Amendment, a procedural due process claim and a takings claim involve distinct inquiries. See Kizas v.

5

Webster, 707 F.2d 524, 539 (D.C. Cir. 1983) ("[T]he fifth amendment employs two independent clauses to address two independent issues. A claim of *deprivation* of property without due process of law cannot be blended as one and the same with the claim that property has been *taken* for public use without just compensation.") (alteration in original) (internal quotation and quotation marks omitted). The Court therefore will address each of the alleged constitutional violations separately.

1. Procedural Due Process Claim

The Fifth Amendment provides, in relevant part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. To prevail on a constitutional due process claim, a plaintiff first must show the existence of an interest protected by the Due Process Clause, and then must establish the government's failure to provide her with the process that she was due. Terrell v. Dist. of Columbia, 703 F. Supp. 2d 17, 22 (D.D.C. 2010) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985)).

"'Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" Thompson v. Dist. of Columbia, 530 F.3d 914, 918 (D.C. Cir. 2008) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 538). A property interest therefore will arise only when such rules or understandings "'secure certain benefits and . . . support claims of entitlement to those benefits.'" Gen. Elec. Co. v. Jackson, 610 F.3d 110, 119 (D.C. Cir. 2010) (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). To have a constitutionally protected property interest in a government benefit, "it is not enough that one has 'an abstract need or desire'" for the benefit; "to merit due process protection, '[sh]e must

6

. . . have a legitimate claim for entitlement to it.'" Id. (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. at 577).

The property interest as issue here is Dr. Yancey's disputed claim to CSRS-LE benefits. Pl. Opp. 13-14.[3] Neither party suggests that it would have been proper to place Dr. Yancey in the CSRS-LE program under the relevant statutes, see Pl.'s Opp'n 13-14 (citing only defendants' representations as basis for coverage); Defs.' Mot. 18-19, and the Court cannot locate any statutory basis for such coverage. St. Elizabeths was a federal hospital until 1987, when the District took over its operation pursuant to the Saint Elizabeths Hospital and District of Columbia Mental Health Services Act. Pub. L. No. 98-621, 98 Stat. 3369 (1984). Following this transfer of operation, Congress acted to ensure that those St. Elizabeths employees who were previously covered by federal retirement programs would remain covered by those federal programs, rather than the District's own retirement programs. Pub. L. No. 100-238, § 109, 101 Stat. 1744 (1988) (amendments relating to Civil Service Retirement System and Federal Employees' Retirement System); 5 U.S.C. § 8331; see 5 C.F.R. § 831.201(g)(1). Individuals like Dr. Yancey, who were hired by St. Elizabeths *after* the transition, were not covered under a federal retirement program unless they had been so covered by virtue of their previous employment. See 5 U.S.C. § 8331(1)(G),(ii).[4]

---

[3] Dr. Yancey does not allege that she was wrongfully deprived of that portion of her salary deducted for retirement benefits, and she does not dispute the District's assertion that she will receive retirement benefits under a District-based pension program. Defs.' Mot. 3; Pl. Opp. 13-14.

[4] Dr. Yancey had not previously worked as a federal government employee. Rather, she worked as a psychologist for the District of Columbia Public School System ("DCPS") from September 17, 1987, through May 20, 1989. Compl. ¶ 7. When working as an employee of DCPS, Dr. Yancey would have been eligible for retirement benefits through the District of Columbia Teachers' Retirement Fund, not the CSRS-LE or any other federal government employees' retirement system. See D.C. Code §§ 1-701, 1-713, 38-2021.01; see

Dr. Yancey nevertheless posits that she is entitled to receive retirement benefits under CSRS-LE based on the representations of DMH employees that she would be eligible for such benefits. Compl. ¶¶ 9-13; Pl.'s Opp'n 14 (asserting Dr. Yancey's "good faith belief, based upon a promise and representation made to her at the time of her appointment and ongoing through her tenure at St. Elizabeths . . . that she would be covered and eligible to receive future CSRS-LE benefits."). Defendants counter that such representations – even if erroneous and misleading – are irrelevant to whether Dr. Yancey has a legally cognizable interest in such benefits. Defs.' Mot. 11. The question before the Court, then, is whether the District's representations over the course of Dr. Yancey's employment are sufficient to create a legitimate claim of entitlement to CSRS-LE benefits. The Court concludes that they are not.

The Supreme Court has held that the payment of funds from the United States Treasury is limited to those purposes authorized by statute, and that the erroneous advice given by a federal employee to a benefits claimant does not create a basis for providing benefits not otherwise permitted by law. Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 415-16, 423-24, 429 (1990); see also Poillucci v. Dep't of Justice, 459 F.3d 1351, 1355 (Fed. Cir. 2006) ("[T]here is no legal basis for granting [federal employee plaintiff] retirement benefits to which he is not entitled by statute, even though a government agency expressed the view that he was eligible for those benefits.") (second alteration in original). The District of Columbia Court of Appeals similarly has recognized a "basic principle of District law that a contracting official cannot obligate the District to a contract in excess of his or her *actual authority*." Dist. of Columbia v. Brookstowne Cmty. Dev. Co., 987 A.2d 442, 447 (D.C. 2010) (emphasis in original) (quoting

---

also Dist. of Columbia Retirement Bd. v. United States, 657 F. Supp. 428, 430 (D.D.C. 1987). Upon her hiring by DMH, Dr. Yancey likely fell within the scope of the District of Columbia Defined Contribution Pension Plan. See D.C. Mun. Regs. tit. 6, § 2601.2 (2011).

Dist. of Columbia v. Greene, 806 A.2d 216, 222 (D.C. 2002)). Furthermore, under the laws of the District of Columbia, one "making or seeking to make a contract with a municipal corporation is charged or imputed with knowledge of the scope of the agency's authority [and its agents'] authority.'" Winder v. Dist. of Columbia, 555 F. Supp. 2d 103, 110 (D.D.C. 2008) (alteration in original) (internal quotation omitted).

Dr. Yancey has offered no authority that suggests that the *District of Columbia*, through erroneous advice by a District of Columbia governmental official, may obligate the *United States government* to pay retirement benefits not authorized by statute.[5] In light of the cases discussed above, the Court cannot imagine that such authority exists. Because Dr. Yancey is not eligible to receive CSRS-LE benefits under the relevant statutory scheme, she does not have a constitutionally protected property interest in the benefits. See Orange v. Dist. of Columbia, 59 F.3d 1267, 1274 (D.C. Cir. 1995) ("Because we have concluded that those [employment] contracts were beyond the Interim President's authority, they do not constitute a property right that triggers the procedural protections of the Due Process Clause."). Without a constitutionally protected property interest, she cannot state a claim of deprivation of property without due process of law.

---

[5] In the jurisdictional section of her opposition brief, Dr. Yancey suggests that the Federal Erroneous Retirement Coverage Corrections Act ("FERCCA") applies here. But she provides no supporting argument in the merits section of her brief, and, as Dr. Yancey was not a federal employee at either DCPS or DMH, it is entirely unclear how this law would apply. Moreover, FERCCA is a limited statute that "provides specific, mandatory remedies for employees who should have been covered under FERS, CSRS, CSRS-Offset, or Social-Security Only, but were instead mistakenly placed in one of the three other systems." Eisenbeiser v. Chertoff, 448 F. Supp. 2d 106, 110 (D.D.C. 2006) (citing Pub. Law. 106–265, 114 Stat. 762 (2000)); see 5 U.S.C. § 8331 (notes). This is not the type of mistake alleged here.

2. Takings Claim

The Fifth Amendment provides, in relevant part, that "private property [shall not] be taken for public use, without just compensation." In order to prevail on a takings claim, a plaintiff "'must first establish that [she] had a protectable property interest cognizable under the Fifth Amendment.'" Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv., 885 F. Supp. 2d 156, 192 (D.D.C. 2012) (quoting Foggy Bottom Ass'n v. D.C. Office of Planning, 441 F. Supp. 2d 84, 89 (D.D.C. 2006)). As with the due process claim, "[s]uch property interests are created and their dimensions are defined by existing rules or understandings arising from non-Constitutional sources." Id. (internal quotation and quotation marks omitted).

A plaintiff alleging an unconstitutional taking of a government benefit, however, must show more than a mere claim of entitlement; there must be some transformation of that claim into a vested property right. Kizas v. Webster, 707 F.2d at 539-40 (rejecting notion that a "legitimate claim of entitlement" protected by the due process clause inherently "rises to the level of 'property' protected by the takings clause."); Nat'l Educ. Ass'n-Rhode Island ex rel. Scigulinsky v. Ret. Bd. of Rhode Island Employees' Ret. Sys., 172 F.3d 22, 30 (1st Cir. 1999) ("[N]oncontractual employee benefits that a recipient has not yet received, but has a mere expectation of receiving, are not property as to which the government, before repealing, must provide just compensation.") (internal quotation omitted). As Dr. Yancey has not established a legitimate claim of entitlement to property necessary to support a due process claim, she necessarily has fallen short of establishing a property right protected by the Takings Clause. See Roth v. King, 449 F.3d 1272, 1286 (D.C. Cir. 2006).

*B. Custom, Policy or Practice*

As discussed above, Dr. Yancey has not alleged facts sufficient to establish either a procedural due process claim or a takings claim. Even if the Court were to assume that such a constitutional violation had occurred, however, Dr. Yancey's claims against the District cannot succeed, as she has failed to adequately plead a municipal custom, policy or practice leading to the purported violation.

In order to hold a municipality liable for civil rights violations under 42 U.S.C. § 1983, the municipality must have acted in accordance with a "government policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Social Servs., 436 U.S. at 694; see Feirson v. Dist. of Columbia, 506 F.3d 1063, 1066 (D.C. Cir. 2007) ("To impose liability on the District under 42 U.S.C. § 1983, [plaintiff] must show 'not only a violation of [her] rights under the Constitution or federal law, but also that the [District's] custom or policy caused the violation.'") (citing Warren v. Dist. of Columbia, 353 F.3d 36, 38 (D.C. Cir. 2004)). Proof of a single incident of unconstitutional activity is insufficient to impose liability unless there is proof that there was a policy in place that was unconstitutional. See Monell v. Dep't of Social Servs., 436 U.S. at 694. The policy or custom must be pervasive to support municipal liability. See Carter v. Dist. of Columbia, 795 F.2d 116, 123-24 (D.C. Cir. 1986).

"There are a number of ways in which a 'policy' can be set by a municipality to cause it to be liable under § 1983." Baker v. Dist. of Columbia, 326 F.3d at 1306. For example, a policy can be effected through

> the explicit setting of a policy by the government that violates the Constitution . . . the action of a policy maker within the government . . . the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom," . . . or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations.

Id. at 1306-07; see also Muhammad v. Dist. of Columbia, 584 F. Supp. 2d 134, 138-39 (D.D.C. 2008).

After careful review of the complaint, the Court determines that Dr. Yancey has not provided any indication that her situation was the result of any custom, practice or policy of the District.

## IV. DR. YANCEY'S REMAINING CLAIMS

For the reasons stated above, the Court concludes that Dr. Yancey has not stated a claim under 42 U.S.C. § 1983 – and cannot do so, consistent with the facts as pleaded in the complaint. Count V, the sole federal law claim, therefore must be dismissed.

Because Dr. Yancey's remaining claims are based on the common law of the District of Columbia, the Court lacks federal question jurisdiction over any live claim in this action.[6] The Court also lacks diversity jurisdiction, as diversity cannot be established between a private party and the District of Columbia. Barwood, Inc. v. Dist. of Columbia, 202 F.3d 290, 292 (D.C. Cir. 2000) ("the District of Columbia, like a state, is not a citizen of a state (or of itself) for diversity purposes") (citing Long v. Dist. of Columbia, 820 F.2d 409, 414 (D.C. Cir.

---

[6] Count IV of Dr. Yancey's complaint requests relief in the form of a declaratory judgment. Declaratory relief is not an independent cause of action, and does not provide an independent source of federal jurisdiction. See Ali v. Rumsfeld, 649 F.3d 762, 778 (D.C. Cir. 2011).

1987)). The Court therefore does not have original jurisdiction over any of the remaining claims in this case.[7]

A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005) ("A district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed."). "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims." Shekoyan v. Sibley Int'l, 409 F.3d at 424 (alteration in original) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)); see also Runnymede-Piper v. Dist. of Columbia, No. 12-cv-00930, 2013 WL 3337797, at *7 (D.D.C. 2013) (declining to exercise supplemental jurisdiction, where no federal claims remained, and the only surviving claims touched on developing areas of District of Columbia common law); Badgett v. Dist. of Columbia, 925 F. Supp. 2d 23, 33 (D.D.C. 2013) (declining to exercise supplemental jurisdiction, where matter "ha[d] not progressed beyond early dispositive motions and the Court ha[d] yet to address the substance of Plaintiffs' local law claims").

In this case, although the complaint was filed in 2010, there has been little involvement by the Court other than overseeing limited discovery and attempts at mediation. The Court has not yet addressed the District of Columbia common law claims, and the parties

---

[7] Furthermore, "it is well-established that a plaintiff cannot bring suit against agencies and departments within the District of Columbia government." Lewis v. Dist. of Columbia, 535 F. Supp. 2d 1 n.1 (D.D.C. 2008) (citing Parker v. Dist. of Columbia, 216 F.R.D. 128, 130 (D.D.C. 2002)). Accordingly, Dr. Yancey's naming of DMH as a separate defendant does not establish a basis for diversity jurisdiction.

would not be prejudiced by the Court declining to exercise supplemental jurisdiction. Moreover, the Court finds that "the District of Columbia Superior Court would naturally have greater familiarity and interest in the issues that remain, insofar as they require interpretation of the District's own statutory and common law." Robinson v. Dist. of Columbia, No. 07-cv-1796, 2013 WL 4647332, at *6 (D.D.C. 2013). The factors enumerated in Section 1367(c) therefore weigh in favor of declining to exercise supplemental jurisdiction over the remaining claims in Dr. Yancey's complaint. Accordingly, the Court has dismissed Counts I through IV without prejudice to their being refiled in the District of Columbia Superior Court.

V. CONCLUSION

For the foregoing reasons, the Court concluded that Dr. Yancey could not state a claim under 42 U.S.C. § 1983, and therefore granted the District's motion for judgment on the pleadings on Count V of Dr. Yancey's complaint. The Court declined to exercise supplemental jurisdiction over Dr. Yancey's remaining claims and dismissed them without prejudice to their being refiled in the District of Columbia Superior Court.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE: November 6, 2013                United States District Judge